UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARON LUCIEN,<br><br>    Plaintiff,<br><br>  v.<br><br>E. GONZALEZ-GAMEZ, et al.,<br><br>    Defendants. | Case No. 23-cv-03670-PCP<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 15 |

   Jaron Lucien, a California prisoner proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Mr. Lucien alleges that defendants Gonzalez-Gomez and Raymundo failed to protect him from the violent acts of another inmate.

   Defendants have moved for summary judgment. Dkt. No. 15 ("MSJ"). The Court agrees with defendants that Mr. Lucien did not introduce evidence showing that they failed in their duty to protect him. Because this argument is dispositive of the matter, the Court need not consider defendants' other arguments.

   For the reasons stated below, defendants' motion for summary judgment is **GRANTED**.

**I.  Background**

   At the relevant time, Mr. Lucien was incarcerated at Salinas Valley State Prison ("SVSP"). Both defendants are correctional officers at SVSP. Compl. at 5.

    On March 12, 2023, Mr. Lucien spoke to multiple inmates in his role as an inmate representative. *See id*. at 6. While fulfilling that duty, "an argument transpired" between Mr. Lucien and non-defendant inmate Jordan. *Id*.; *see also* MSJ at 8 (naming the other inmate). Although Mr. Lucien alleged in the Complaint that the argument "resulted in a mutual combat," *id*., in his deposition Mr. Lucien conceded that he had "reacted" to a "disrespectful" statement by

United States District Court
Northern District of California

1    inmate Jordan by hitting him. *Compare* Compl. at 6 *with* Dkt. No. 15-6 at 44:5–22. Defendant

2    Gonzalez-Gomez announced the fight on his institutional radio, and verbally ordered Mr. Lucien

3    and inmate Jordan to "get down." *See* MSJ at 2–3. Defendant Raymundo responded to the radio

4    announcement by running toward the fight, verbally ordering Mr. Lucien and inmate Jordan to

5    "get down" as he ran toward them. *See id.* at 3. Mr. Lucien and inmate Jordan did not cease

6    fighting, and Defendant Raymundo deployed pepper spray. *See id*. Both inmates then "followed

7    orders and got down in a prone position." Compl. at 6.

8        Mr. Lucien contends that, while he remained in the prone position, "the next thing I know,

9    was the other inmate stood up [and] attacked [him]" while defendants "stood and watched with

10    deliberate indifference." *Id*. Defendants dispute Mr. Lucien's description of this second encounter,

11    and submit five video recordings, from multiple angles, to support Defendants' version of events.

12    *See* Dkt. No. 15-3 ("Lopez Declaration") Exs. C–G. The Court has reviewed this footage

13    carefully. It shows that Mr. Lucien and inmate Jordan were fighting on the floor when officers

14    arrived. An officer wearing a baseball cap deployed pepper spray, and the inmates separated. Mr.

15    Lucien got up, ran around a stairwell and assumed the prone position between the stairwell and a

16    wall. Lopez Decl. Exs. D–F. Inmate Jordan remained in the same position. *See id*. Defendants

17    explain that they could not immediately handcuff Mr. Lucien or inmate Jordan because there were

18    no back-up officers in the room. *See* Dkt. No. 15-4 ("Raymundo Declaration") ¶ 3; Dkt. No. 15-5

19    ("Gonzalez-Gamez Declaration") ¶ 4. Defendants asked the housing unit control officer to "open

20    the doors" so that additional officers could enter the room and handcuffs could be applied. *See*

21    Lopez Decl., Exs. F–G; Raymundo Decl. ¶ 3; Gonzalez-Gamez Decl. ¶ 4.

22        Mr. Lucien remained in the prone position for approximately one second, then moved to a

23    crouching position, then stood up. Within fifteen seconds of his first assuming the prone position,

24    Mr. Lucien was fully standing as a beanie-wearing officer stood facing Mr. Lucien and repeatedly

25    ordered him to get down. *See* Lopez Decl., Exs. E, G. While Mr. Lucien was standing, inmate

26    Jordan also rose. *See id*.

27        Mr. Lucien remained standing for approximately six seconds. *See id*., Ex. E. The beanie-

28    wearing officer continued to face Mr. Lucien and told Mr. Lucien twice to get down. *See id*.

2

During this time, inmate Jordan took several steps in Mr. Lucien's direction. The steps were slow and stumbling, and inmate Jordan appeared to be wiping pepper spray from his face using his t-shirt. *See id*., Exs. F–G. The officer wearing the baseball cap was facing inmate Jordan, pointing his pepper spray in inmate Jordan's direction, and ordering inmate Jordan to get down. *See id*.

Mr. Lucien returned to a crouching position. *See id*., Ex. D. Approximately four seconds later, inmate Jordan began to run in Mr. Lucien's direction, clockwise around the stairwell, and Mr. Lucien stood up. *See id*., Exs. D, E. The officer wearing a baseball cap immediately began running counter-clockwise around the stairwell. *See id*., Ex. F. While inmate Jordan ran toward Mr. Lucien, an officer verbally ordered him to get down. *See id*., Exs. F, G. Inmate Jordan reached Mr. Lucien within approximately two seconds and Mr. Lucien appeared to strike inmate Jordan and knock him down. *See id*., Exs. D, E, G. Approximately two seconds after the fight began, both officers arrived at the fight and deployed pepper spray. *See id*., Exs. F, G. The inmates then separated. *See id*., Ex. E.

Mr. Lucien contends that when inmate Jordan ran toward him, this began a "second fight" during which Mr. Lucien sustained injuries. Dkt. No. 19 ("Opposition") at 2. He explains that he received a rule violation for the first fight, and inmate Jordan received a rule violation for the second fight. *See id*. Mr. Lucien argues that he "ha[s] the body cameras on [his] side showing, that the officer allowed [inmate Jordan] to get up, and run over sixty (60) feet to attack [Mr. Lucien] while [he] was still proned out." *Id*. at 3.

A.      **Implied Rule 56(d) Motion**

In his Opposition, Mr. Lucien appears to request additional discovery. *See* Dkt. No. 19 ("Opposition") at 3. Although Mr. Lucien did not expressly move for relief under Federal Rule of Civil Procedure 56(d) ("Rule 56(d)"), the Court construes his statements as a "*request under Federal Rule of Civil Procedure 56(d) for further discovery prior to judgment.*" *Calloway v. Veal*, 571 F. App'x 626, 627–28 (9th Cir. 2014) (stating that even improperly phrased requests should be construed as Rule 56(d) motions, because of "the allowances that must be made for pro se prisoners"); *Hausauer v. City of Mesa*, 754 F. App'x 665, 666 (9th Cir. 2019) (holding that a pro se plaintiff's inartful request could be construed as a Rule 56(d) motion, and affirming the district

court's denial of the Rule 56(d) motion).

Rule 56(d) is a device for litigants to avoid summary judgment when the non-movant needs to discover affirmative evidence necessary to oppose the motion. *See Garrett v. San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987). To succeed on a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *see, e.g., id.* at 853–54 (district court correctly denied motion for continuance to engage in further discovery under Rule 56(d) where plaintiff did not provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described, and his assertions appeared based on nothing more than "wild speculation"). Rule 56(d) requires that the requesting party show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment. *See Family Home & Fin. Ctr. v. Fed. Home Loan Mtg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *see also Margolis*, 140 F.3d at 853–54 (district court correctly denied Rule 56(d) motion where plaintiff did not provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described). The party seeking relief must "explain *why* those facts would preclude summary judgment." *Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006) (emphasis added). The party must also show that it "diligently pursued its previous discovery opportunities, and . . . demonstrate that allowing additional discovery would . . . preclude[] summary judgment." *Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999).

"The failure to conduct discovery diligently is grounds for the denial of a [Rule 56(d)] motion." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002); *accord Long v. Playboy Enters. Int'l, Inc.*, 565 F. App'x 646, 648 (9th Cir. 2014) ("Failing to diligently pursue discovery in the past is sufficient reason to deny [a Rule 56(d) motion for] further discovery."). As the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") has repeatedly held, even pro se prisoners must pursue discovery in a diligent manner. *See McRae v. United States*, 812 F. App'x 505 (9th Cir. 2020) ("The district court did not abuse its discretion by denying [federal

4

prisoner] McRae's requests for additional discovery pursuant to Fed. R. Civ. P. 56(d) and to continue summary judgment [in a case under the Federal Tort Claims Act] because McRae did not diligently pursue discovery during the time allotted by the district court.").[1]  Diligence is so important that the Ninth Circuit will only overturn the district court's discretionary Rule 56(d) order if "the movant [both] diligently pursued its previous discovery opportunities, *and* can demonstrate that allowing additional discovery would have precluded summary judgment." *PENGWIN*, 175 F.3d at 1117–18 (emphasis added).

Mr. Lucien's request for additional discovery is DENIED.

First, Mr. Lucien did not fulfill Rule 56(d)'s requirements. He did not provide any affidavit, much less one identifying specific facts that would preclude summary judgment. *See Family Home & Fin. Ctr.*, 525 F.3d at 827. Nor does the record suggest that Mr. Lucien *diligently* pursued the desired discovery, as the Ninth Circuit requires. *See, e.g.*, *Pfingston*, 284 F.3d at 1005; *McRae*, 812 F. App'x 505 (9th Cir. 2020). Mr. Lucien did not describe any efforts to secure information from defendants through the discovery process, and the docket for this action does not contain any discovery motions. *See generally* Opp. & Dkt. Mr. Lucien argued in his unsworn Opposition that he can present testimony from fifteen inmates, but he did not do so. *See* Opp. at 3; *see generally id*. Nor has he filed additional evidence in the several months since his Opposition was filed. *See generally* Dkt.

Second, even if Mr. Lucien were able to obtain the evidence described in his Opposition, this evidence would not preclude summary judgment.

## II. Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against

---

[1] *See also Ricky R. v. City of Alhambra*, 330 F. App'x 639, 640 (9th Cir. 2009) (finding that district court did not abuse its discretion, where pro se prisoner had not diligently pursued discovery); *Revelles v. Stout*, 103 F. App'x 622, 627 n.5 (9th Cir. 2004) (same); *Seaton v. Shatzer*, 230 F.3d 1367 (9th Cir. 2000) (same); *Locken v. Robbins*, 24 F.3d 247, at *4 (9th Cir. 1994) (same) (unpublished); *Mann v. Beaty*, 874 F.2d 816, at *4 (9th Cir. 1989) (same) (unpublished).

United States District Court
Northern District of California

1   a party who fails to make a showing sufficient to establish the existence of an element essential to

2   that party's case, and on which that party will bear the burden of proof at trial ... since a complete

3   failure of proof concerning an essential element of the nonmoving party's case necessarily renders

4   all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is

5   material if it might affect the outcome of the lawsuit under governing law and a dispute about such

6   a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

7   the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

8      In a typical summary judgment motion, a defendant moves for judgment against a plaintiff

9   on the merits of his claim. In such a situation, the moving party bears the initial burden of

10   identifying those portions of the record which demonstrate the absence of a genuine dispute of

11   material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by

12   his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,'

13   designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

14      The court's function on a summary judgment motion is not to make credibility

15   determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W.*

16   *Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must

17   be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the

18   facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

19   **III.**     **Analysis**

20      Mr. Lucien's claim that defendants failed to protect him is evaluated under the Eighth

21   Amendment.

22      The "'treatment a prisoner receives in prison and the conditions under which he is confined

23   are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832

24   (1994). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate

25   food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the

26   safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two

27   requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious,

28   *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison

United States District Court
Northern District of California

6

1    official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id*.

2    (citing *Wilson*, 501 U.S. at 297).

3        The failure of prison officials to protect inmates from attacks by other inmates or from

4    dangerous conditions at the prison violates the Eighth Amendment when two requirements are

5    met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is,

6    subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison

7    official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health

8    or safety by failing to take reasonable steps to abate it. *Id.* at 837.

9        Where an officer does not act to stop a fight between inmates, courts have found that the

10   inaction suggests that the officer was deliberately indifferent to the plaintiff's safety. *See Robinson*

11   *v. Prunty*, 249 F.3d 862, 864 (9th Cir. 2001) (affirming denial of summary judgment where "the

12   correctional officers on duty in the yard watched the fight for about five minutes without

13   attempting to stop it"); *Cortez v. Skol*, 776 F.3d 1046, 1052 (9th Cir. 2015) ( "[a] jury could

14   reasonably conclude that" the officer "exposed [the plaintiff] to a substantial risk of serious

15   injury," where the officer did not intervene during a five-minute attack).

16       Here, the evidence shows that defendants acted to stop the attack. Although Mr. Lucien

17   argues that defendants "allowed [inmate Jordan] to get up, and run over sixty (60) feet to attack

18   [Mr. Lucien] while [he] was still proned out," the footage on which he relies does not support this

19   characterization. *Id*. at 3. The footage shows, rather, that inmate Jordan rose from the prone

20   position while Mr. Lucien already was standing and took several stumbling steps toward Mr.

21   Lucien while Mr. Lucien was standing or was crouched, and that Mr. Lucien was standing when

22   inmate Jordan reached him. *See* Lopez Decl. Exs. D–F. It shows that during the ten seconds in

23   which inmate Jordan moved toward Mr. Lucien, at least one officer had a pepper spray can

24   pointed at inmate Jordan and verbally ordered him to get down. *See id*. It shows that pepper spray

25   was deployed to stop this second attack within two seconds of the inmates encountering one

26   another. *See id*. Defendants did not "allow" inmate Jordan to attack Mr. Lucien; rather, they

27   attempted to head off any such attack with verbal orders and deployed physical force when verbal

28   orders failed.

United States District Court
Northern District of California

1    In his Opposition, Mr. Lucien does not contend that defendants should have or were

2    permitted to handcuff Mr. Lucien and inmate Jordan immediately upon their assumption of the

3    prone position. *See generally* Opp. Rather, Mr. Lucien appears to argue that defendants should

4    have deployed their pepper spray ten seconds sooner against inmate Jordan, without issuing verbal

5    commands first. *See id*. at 3. Specifically, he argues that in other instances where a fight was

6    broken up by only two officers and the inmates either failed to get down upon orders or got back

7    up to resume the fight, the inmates "were either sprayed with a pepper supersoaker, hit with

8    batons, or shot with a block gun."[2] *Id*.

9    Even if other SVSP officers have used force in similar situations, defendants here were not

10   deliberately indifferent in waiting ten seconds to deploy pepper spray. First, the delay was likely

11   too brief to exhibit indifference. Courts in this District have found that response times as long as

12   thirty seconds did not constitute deliberate indifference. *See Smith v. Ducart*, No. C 15-3964

13   WHA (PR), 2018 WL 10419333, at *3 (N.D. Cal. Mar. 8, 2018) (finding, where it took officers

14   "only 38 seconds" to stop a fight, that "this is not an excessive amount of time"); *Payne v. Senuta*,

15   No. C 09-4084 CW PR, 2011 WL 3515900, at *6 (N.D. Cal. Aug. 11, 2011) (concluding there

16   was no deliberate indifference where the inmates fought for at least thirty seconds before

17   intervention). Second, defendants acted to head off any attack during those ten seconds by issuing

18   verbal warnings. Although delays in addressing a fight have been found to constitute deliberate

19   indifference in some circumstances, those circumstances have generally involved several minutes

20   and complete inactivity from the officers during that time. *See, e.g.*, *Robinson*, 249 F.3d at 864

21   ("the correctional officers on duty in the yard *watched the fight* for about five minutes without

22   attempting to stop it") (emphasis added); *Cortez*, 776 F.3d at 1052 (concluding the matter should

23   go to the jury where the officer did not intervene during a five-minute attack); *see also Leonard v.*

24   *Peters*, No. 21-35471, 2023 WL 387035, at *3 (9th Cir. Jan. 10, 2023) (finding defendant was

25   entitled to qualified immunity, and suggesting defendant was not deliberately indifferent, where

26   defendant took no action for ten seconds before intervening in an attack). Because the undisputed

27   _____

28   [2] In the Opposition, Mr. Lucien seeks additional discovery as to these fights between other
     inmates. *See id*. The Court has denied this request. *See supra* I.A.

United States District Court
Northern District of California

evidence shows that defendants' delay amounted only to ten seconds and that during that time defendants issued verbal warnings to inmate Jordan to get down, defendants were not deliberately indifferent to Mr. Lucien's safety.

Because defendants were not deliberately indifferent to Mr. Lucien's safety, the Court **GRANTS** defendants' Summary Judgment Motion.

**IT IS SO ORDERED.**

Dated: August 19, 2025

_____
P. Casey Pitts
United States District Judge